# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

## THE BOARD OF COMMISSIONERS OF PILOTS, Respondent, *v.* FRANCIS PIDGEON, Appellant.

*Action to recover a penalty for illegal dumping in New York harbor—the intent of the defendant must be shown—1857, ch. 671, § 7, as amended by chapter 414 of 1876.*

Appeal from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial, made on the minutes.

This action was brought to recover a penalty for an alleged violation of section 7 of the act to establish regulations for the port of New York, passed April 15, 1857 (ch. 671), as amended by chapter 414 of the Laws of 1876.

Section 7 is as follows: " Section 7. When any slip, basin, or shoal, in the port of New York, shall be dredged or excavated, it shall be the duty of the person or persons causing the same to be dredged, to cause the sand, mud, or other materials so dredged to be towed to sea, at a point at least three miles outside of Sandy Hook, or deposited at some place above high water mark; or to be deposited behind a bulkhead for filling; and any person willfully violating the provisions of this section shall forfeit and pay to the said commissioners the sum of five dollars for every cubic yard removed not so disposed of, one-half of which shall be retained by the commissioners."

On the trial of this action, the plaintiff showed that two scows loaded with dredgings taken from the front of the dock of the defendant, were taken in tow by the tug boat *Francis Pidgeon, Jr.*, belonging to the defendant, carried out, and their contents dumped at points less than three miles outside of Sandy Hook. This made a *prima facie* case against the defendant, which would subject him to the penalty unless satisfactorily answered or explained by him. The defense set up by the defendant was substantially that the dumping in question was done without his knowledge or consent, and in violation of his express orders. On the part of the defendant it was proved that the dredging was done by the Atlantic Dredging Company, who were for that purpose employed by the defendant; that A. S. Packard was the agent or managing man of that company, and that he made the contract with defendant to do this dredging. The defendant, while on the stand as a witness, was asked on his own behalf, "What was the contract between Packard and yourself in reference to that dredging?" This was objected to as immaterial and irrelevant; the objection was sustained, and the defendant excepted.

"Q. Do you say that you made a contract with him to do this dredging?" Same objection, ruling and exception.

"Q. Do you know what was done by Mr. Packard under that contract between yourself and this dredging company?" Same objection, ruling and exception.

After testifying that the Atlantic Dredging Company owned the scows that had been mentioned by the witnesses, he was asked, "Did you, at any time, have them under your control?" This question was objected to, the objection sustained and the defendant excepted. He was then asked, "Whose men were employed on, or had charge of these particular scows?" This was objected to on the grounds previously stated, and also that the scows were in tow of the witnesses' tug; the objection was sustained, and the defendant excepted. The defendant then further testified, that his tug towed those scows, and that he had given the captain of the tug instructions as to where he was to tow the scows; that the instructions were that they were to be taken to Packard's dump, and that he did not afterwards give him any other instructions as

to where the scows were to be taken. He was then asked the following question : " Had you any knowledge of those scows being towed to any other place than this dumping ground of Packard's at the time it was done ? " This was objected to on the grounds previously stated, and on the ground that it was a question to be submitted to the jury. The objection was sustained, and the defendant excepted. He was then asked : " If the scows were dumped at any other point, was it done with your knowledge or consent ? " Same objection, ruling and exception. He testified that he was away in the country, and did not see the captain of the tug on the 15th of August, when the alleged violation of the law occurred, and was then asked : " Under whose direction was your captain at that time ? " This was objected to, the objection sustained, and the defendant excepted.

One Joseph Conway was called as a witness for the defendant, and was asked : " Did A. S. Packard, at this time in question, have a dumping ground in New York harbor ? " The question was objected to, the objection sustained, and the defendant excepted.

The captain of the tug was called as a witness, and testified that he was such captain ; that Mr. Packard did the dredging ; that he did the towing ; that he received instructions from Mr. Pidgeon as to where the scows were to be dumped or towed, and was directed to tow them to Packard's dump, Jersey Flats ; that defendant was not present on the 15th of August when he started with the scows mentioned by the plaintiff's witnesses ; that he did not see him at all on that day or receive instructions from him ; that he received directions from other persons at that time, with reference to towing those scows to other points.

One Charles A. Cregan was also called as a witness, and he testified that he was in the employ of the defendant, and that he gave the captain of the tug instructions in regard to where the dredgings were to be deposited ; that he was working for the defendant in the capacity of book-keeper, and when defendant was away in the country he did his out-door business. He was asked, " Where did you direct him (the captain) to take those scows to ? " The question was objected to, the objection sustained, and the defendant excepted.

The court, at General Term, said : " It seems to us that in view of the testimony given on the part of the plaintiffs and of the defendant, it was palpable error to have excluded the testimony called for by the questions above recited. The defendant had a right to lay before the jury the fact that he had made a contract with the Atlantic Dredging Company through Mr. Packard ; that Mr. Packard had a dumping ground of his own on the Jersey Flats, where the material to be dredged was to be dumped ; that he had given instructions to the captain of the tugboat that the scows should be towed there and dumped, and that he had no knowledge of the scows being towed to any other place than Packard's dumping ground ; and that if the scows were dumped at any other point, it was done without his knowledge or consent ; and that at the time the act for which he was prosecuted was done, the directions under which the captain acted were given by other persons and not by him. All of these were facts proper for the consideration of the jury on the question whether the act was done by the defendant, and whether it was a willful act on his part. It certainly would be a defense to this action, if the captain of the tug, in willful violation of the instructions to tow the scows to Packard's dump, and there deposit their contents, had of his own motion towed them out of the harbor, to the point described, and wrongfully dumped their contents there. A principal is not liable to a penalty incurred by his servant in willful disobedience of his orders. The responsibility in such case rests upon the servant ; and the defendant had the right to show, if he could, such a state of facts as would exculpate him from liability, and prove that it rested properly and legally upon the captain of the tug.

" We are unable to see any good reason for taking from the consideration of the jury the facts sought to be proved under the questions above recited ; and we think there must be a new trial, because of the exclusion of proper evidence on behalf of the defendant."

*J. H. Stanbrough*, for the appellant.

*Wm. Allen Butler*, for the respondent.

Opinion by DAVIS, P. J.; BRADY and BARRETT, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event.